UNITED STATES, Appellee

v

JAMES R. WINTON, JR., Airman First Class,
U. S. Air Force, Appellant

15 USCMA 222, 35 CMR 194

*Lieutenant Colonel Andrew S. Horton* argued the cause for Appellant, Accused. With him on the brief was *Colonel Robert O. Rollman.*

*Major Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

QUINN, Chief Judge:

The accused was charged with forgery, in violation of Article 123 (Charge I), and two specifications alleging violations of Article 134 (Charge II) of the Uniform Code of Military Justice, 10 USC §§ 923 and 934, respectively. At trial, he moved to dismiss the first charge for lack of jurisdiction. The motion was denied. Thereupon, he entered a plea of guilty to all charges and was sentenced to a bad-conduct discharge, confinement at hard labor for twelve months, and forfeiture of $50.00 per month for a like period. The conviction was affirmed on review. In this Court, the accused reasserts the absence of jurisdiction as to the forgery charge, and contends that the allegations of specification 1 of Charge II are insufficient to allege an offense.

Charge I alleges the accused falsely made "the signature of Michael V. Smith [a staff sergeant and accused's supervisor at the time] as co-signer to a note." The note, in the amount of $250.00, was payable to the United States Air Force Security Service Federal Credit Union, San Antonio, Texas. It was executed at Osan Air Base, Korea.

In an out-of-court hearing on a defense motion to dismiss, it was shown that the enlistment during which the alleged offense was committed expired in May 1963. At that time, the accused was given an honorable discharge. On August 16, 1963, the accused reenlisted in the Air Force at Albany, New York. In due course, he was transferred to Korea. The charge was filed against him on January 6, 1964. Defense counsel contended that the intervening discharge divested the court-martial of jurisdiction over the offense. See United States v Gallagher, 7 USCMA 506, 22 CMR 296.

Military law requires jurisdiction over the person and over the offense for trial by court-martial. See United States v French, 10 USCMA 171, 27 CMR 245; United States v Blanton, 7 USCMA 664, 23 CMR 128. A separation from the service which completely severs all relationship with the military terminates the power of the military to try the accused by court-martial for an offense committed by him before separation. Toth v Quarles, 350 US 11, 100 L ed 8, 76 S Ct 1 (1955); cf. United States v Bowie, 14 USCMA 631, 34 CMR 411. Reenlistment restores jurisdiction. United States v Martin, 10 USCMA 636, 28 CMR 202. But Congress has limited the kind of offense that can be tried by court-martial on the accused's return to military control.

Article 3(a) of the Uniform Code, supra, 10 USC § 803, imposes two conditions precedent to trial by court-martial for an offense committed in a previous term of service. The first condition is that the offense be "punishable by confinement for five years or more"; the second is that the offense "cannot be tried" in a Federal, state, or territorial court. Forgery in violation of Article 123, Uniform Code, supra, is punishable by confinement for five years and, therefore, the first condition is satisfied. See Manual for Courts-Martial, United States, 1951, paragraph 127c, Section A. The remaining question is whether the offense is punishable

in an American civilian court. The accused contends it is.

Briefly, the defense argument is that the allegations of the specification spell out a violation of Title 18, § 1006 of the United States Code, which is triable in a United States district court, whether the offense is committed within or outside the territorial limits of the United States. See United States v Steidley, 14 USCMA 108, 33 CMR 320.[1] The cited statute provides in part that "[w]hoever, being an officer, agent or employee of or connected in any capacity with" certain named Federal agencies "or any . . . credit . . . association . . . acting under the laws of the United States" commits specified acts is punishable by imprisonment for five years or a fine of $10,000.00 or both. The accused contends that a Federal credit union is an association covered by the act (see United States v McCarthy, 196 F2d 616 (CA 7th Cir) (1952)), and that a member of a credit union is a person "connected" with such institution, within the meaning of the act. Whether the accused correctly interprets the statute need not detain us. The evidence demonstrates he was not a member of the credit union when he forged Sergeant Smith's signature as comaker of the note.

There is no direct evidence that the accused was a member of the credit union previous to the application for the loan in connection with which he submitted the forged note. Defense Exhibit B, which is a short "Autobiographical Sketch" of the accused submitted during the sentence proceedings, reviews the occasion for the loan. It indicates that the accused had no previous dealings with the credit union.

In the sketch, the accused refers to his desire to marry a local girl. Both were in debt. The accused "decided to try to get a loan" from the credit union, in the belief that he would then "be in fairly good shape financially." However, "after submitting the first application" he learned that, since he was not yet twenty-one years of age, he "needed a co-signer."[2] He asked Sergeant Smith to cosign the note, but Smith refused to do so. Thereupon, the accused applied to the Temporary First Sergeant, who asked that the application and the note be left with him, while he "look[ed] into the matter." About ten days later, the accused learned the Temporary First Sergeant had gone for an indefinite period to Japan, without signing the note. Since some of the accused's creditors were "getting prettly restless" and the accused was "the impetuous type," he forged Smith's signature as comaker and sent the note and his application to the credit union. He felt that everything would eventually "work out" because he had earlier applied for an allotment of $40.00 a month for the credit union to repay the prospective loan.

A stipulation of fact indicates that when the accused reenlisted in the Air Force in August 1963, he was still indebted to the credit union for the loan to the extent of $110.00. In September, he applied for a second loan, which became the basis for one of the specifications of Charge II. In November 1963, the accused was informed he had $63.00 in "shares" credited to his account. He asked that this amount be applied to his indebtedness.

Considering the evidence in the light most favorable to the accused, it indisputably appears that he had no connection with the credit union previous to his application for a loan. From the statutory limitation on the powers of a credit union, we may assume that the accused became a member on the approval of his application for a loan. See Title

---

[1] If an act constitutes a violation of two or more statutes, the offender ordinarily cannot complain about the Government's selection of one rather than another of the statutes as the basis for prosecution of the act. United States v Barnes, 14 USCMA 567, 34 CMR 347. Instead of determining whether the rule is applicable to the accused's contention, we prefer to consider it on the merits.

[2] Other evidence indicates that the initial application, which was made in December 1962, was returned by the credit union because it did not comply with "the law," in that a note signed by a comaker had to accompany the application for the loan.

12, § 1757, United States Code. That approval, however, came *after* the accused forged Smith's name as comaker to the note. The forgery was accomplished at Osan Air Force Base in Korea in January 1963. The application was approved by the credit union loan officer in San Antonio, Texas, in February 1963. The offense charged was, therefore, committed while the accused was not a person subject to Title 18, § 1006, United States Code; and none of the courts enumerated in Article 3 of the Uniform Code, supra, had jurisdiction over it. As a result, both conditions prescribed by the Article for the exercise of court-martial jurisdiction over an offense committed in a prior period of service were satisfied. Charge I and its specification were thus properly before the court-martial.

Turning to Charge II, the accused contends the allegations of specification 1 are insufficient to state an offense under Article 134 of the Uniform Code, supra. The specification was predicated upon an application to the credit union in September 1963, for a second loan. On the application form the accused again forged Smith's name, this time to indicate that Sergeant Smith recommended approval of the applied-for loan. In pertinent part, the specification alleges the accused:

"... did, ... with intent to deceive, falsely, and without authorization, make the signature of Michael V. Smith to a loan application form ... [indicating] that ... Michael V. Smith recommended that the loan be approved and ... [the] application form was subsequently forwarded to the USAFSS Federal Credit Union by the ... [accused]."

In substance and effect, the purported recommendation is a representation that the accused was a good credit risk. In United States v Wilson, 13 USCMA 670, 674, 33 CMR 202, we held that a forged statement of that nature did not constitute conduct to the discredit of the armed forces, in the absence of any allegation that the statement was "communicated to anyone." The accused maintains the present specification suffers from the same deficiency. Here, however, unlike the specification in *Wilson*, there is an express allegation that the application was "forwarded" to the credit union by the accused.

There is nothing to indicate, and the accused does not contend, that the word "forwarded" was used in █ other than its ordinary sense. Webster defines the infinitive form of the word as to "send toward the place of destination." Webster's Third New International Dictionary, at page 896. The specification does not indicate the mode by which the accused forwarded the form, or the location of the addressee. Whatever the mode of forwarding and whatever the addressee's location, the allegation is sufficient to convey the idea that the application was delivered to the addressee. See Wigmore, Evidence, 3d ed, § 95. A court-martial can determine that, under circumstances presented by the evidence, the submission of a forged recommendation for favorable consideration of a loan to a credit institution, with the intent to deceive, is conduct to the discredit of the armed forces. See United States v Daggett, 11 USCMA 681, 29 CMR 497; United States v Choleva, 33 CMR 599, 605. The accused's plea of guilty, the providence of which is not disputed, admits that the circumstances under which the document came to the credit union's attention constitutes conduct to the prejudice of the armed forces.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.