465 P.2d 363

**STATE of Arizona, Appellee,**

**v.**

**James Warren MADDEN and Gary Michael Stephens, Appellants.**

**No. 1916.**

Supreme Court of Arizona,
In Banc.

Feb. 20, 1970.

Gary K. Nelson, Atty. Gen., by William P. Dixon, and Carl Waag, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender, by Anne Kappas, Deputy Public Defender, Phoenix, for appellants.

HAYS, Justice.

Defendants James Madden and Gary Stephens were jointly convicted of robbery and sentenced to serve a term of not less

than five years nor more than five years and one day at the State prison.

The victim of the robbery, one James Beck, was riding his bicycle west along Camelback Road in Phoenix shortly after 3 a. m. on the morning of October 18, 1967. Near the vicinity of the 3800 block of West Camelback, a 1960 Cadillac pulled along side of Beck and forced him off the road. Several assailants emerged from the car, grabbed Beck around the neck and body, forced him into an irrigation ditch, and robbed him of his watch, wallet, checkbook, money and keys. After the assailants' car drove off, Beck procured the assistance of a passing motorist, who drove him to a nearby tavern from where Beck called the police. An emergency bulletin was sent out on the police radio network.

Responding to the emergency radio bulletin, Officer Robert Schirmang of the Phoenix Police Department stopped a 1960 grey Cadillac near the corner of 23rd Avenue and Camelback at 3:18 a. m. Defendant Madden was seated in the car's front seat and defendant Stephens was seated in the rear. A third occupant, one Fred Barron, was the driver of the car. Officer Schirmang asked for and received Barron's driver's license as well as the vehicle registration, which indicated that the car was owned by Madden. After checking these documents, Officer Schirmang walked back to his police car, radioed for additional help, and waited until a few minutes later when Officer Kent Keller arrived on the scene. Keller and Schirmang conversed briefly, and then Keller approached the occupants of the car and read them the standard *Miranda* warnings. The defendants and Barron were taken into custody a short while later, after which the car was moved off the highway and over to a garage. Approximately a half hour after Officer Schirmang originally stopped the Cadillac, the car was searched and the items which had been taken from the victim Beck were discovered. At the time of the search, the defendants and Barron had already been taken away in a police car.

No search warrant was obtained prior to the search of the vehicle.

■ Although the items seized in the search of defendants' car were never introduced into evidence, testimony concerning their discovery and identity was admitted, over objection by defense counsel, as evidence to prove defendants' participation in the robbery. Defendants argue on appeal that such evidence was inadmissible because the warrantless search of defendants' automobile violated the Fourth Amendment to the United States Constitution. We agree.

■ Cases of the U. S. Supreme Court make it clear that police searches of motor vehicles "must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible." Preston v. United States, 376 U.S. 364, 366, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964). In Preston, police arrested "three suspicious men" who were seated in an automobile at approximately 10 p. m. one evening. At the time of the arrest, the officers searched the three men for weapons, took them to police headquarters, and booked them on charges of vagrancy. The car, which had not yet been searched, was then driven by police officers to the police station, from where it was towed to a garage. At the garage, the car was searched without a search warrant, and two revolvers plus other felonious equipment were found. These articles were later used against the defendant at trial.

The Supreme Court reversed Preston's conviction, holding that the search of the vehicle was unreasonable and not justified as a valid search incident to a lawful arrest. In support of its holding the Court stated:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon

or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, supra, 269 U.S., 20, at 31, 46 S.Ct. 4 at 5, 70 L.Ed. 145. Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car was stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. See Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856. The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime—assuming that there are articles which can be the "fruits" or "implements" of the crime of vagrancy. Cf. United States v. Jeffers, 342 U.S. 48, 51–52, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. See Carroll v. United States, supra, 267 U.S. 132, at 153, 45 S.Ct. 280, at 285, 69 L.Ed. 543. We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible." 376 U.S. at 367–

368, 84 S.Ct. at 883–884, 11 L.Ed.2d at 780–781.

We think that the Preston rationale is controlling in the instant case and hold that the search of defendants' 1960 Cadillac was unlawful.

Although the facts of this case do not indicate that the search of defendants' vehicle was as remote in place from the location of the arrest as in the Preston case, the Preston rationale nevertheless compels a reversal here. At the time of the search, defendants were in custody and had been hauled away from the scene of the arrest. They no longer exercised any control over the vehicle. There was no danger that defendants might use a concealed weapon or destroy material evidence which might be in the car. The police officers could have obtained a warrant to search the automobile. Plainly, the search was too remote in time and place to be justified absent a warrant. In all situations, searches made incident to a lawful arrest are limited by the principle that police must, whenever practicable, obtain a judicial warrant authorizing the prospective search.

Defendants cite numerous other errors in the trial below. Because we are reversing the judgments of conviction, however, we find it unnecessary to consider all but one of defendants' additional contentions. In order to aid the trial court on retrial, we must rule on the constitutionality of defendant Stephens' lineup identification.

Several hours after the two defendants and Barron were booked at police headquarters, a lineup was arranged. Since the three suspects were without appointed counsel at the time, the police called the public defender's office and asked that an attorney be sent over to represent the suspects' interests at the lineup. A deputy public defender, Charles Hyder, arrived and participated in the lineup proceedings in behalf of the suspects. Hyder conversed with the suspects, requested that the

shirts of all the men in the lineup be removed, and asked that additional lineup participants be brought in. The lineup consisted of five subjects, including the three suspects and two other inmates from the county jail. James Beck viewed the lineup through a two-way mirror for about a minute, and then identified defendant Stephens as the assailant who had grabbed him around the neck. No other identification was made. Attorney Hyder, though present at the entire proceeding, did not accompany the victim Beck into the viewing room.

Defendants contend that the above described lineup was illegally conducted, arguing (1) that defendants were not represented by counsel and (2) that the lineup itself was suggestive and unfair. At the trial the defendants asked for and received a hearing, outside the presence of the jury, to determine the legality and fairness of the pretrial lineup. See State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969). At the close of the hearing, the trial judge concluded that the defendants were adequately represented by counsel at the lineup, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and that the circumstances of the lineup were not unduly suggestive. We hold that the trial judge's conclusions are supported by the evidence.

Defendants argue that although an attorney was present in their behalf at the lineup, an attorney-client relationship as required by Wade, supra, was never established for the reason that the Court had not yet appointed counsel and defendants had not been given the opportunity to procure counsel of their own choosing. There is no merit to this argument. The record indicates that attorney Hyder vigorously represented the interests of defendants. Shortly after the lineup, the public defender's office was appointed as counsel for defendants. Under the circumstances, to argue that defendants were prohibited from seeking counsel of their own choice is specious. Defendants received adequate and effective assistance of counsel at the lineup proceedings.

The record does not indicate that the lineup was suggestive. Although the three suspects were present together in the five man lineup, victim Beck consistently admitted that at the time of the robbery he saw only one face. At the lineup, he identified only defendant Stephens as one of his assailants. All of the participants of the lineup were white and of similar age and build. We find no indication in the record of the pretrial hearing that the lineup was conducted in other than a fair and impartial manner. Evidence of the lineup identification is therefore admissible at trial.

The judgments of conviction are reversed and this matter is remanded for a new trial.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concur.