17 Ariz. App. 207 (1972)
496 P.2d 633
STATE of Arizona, Appellee,
v.
James S. WASHINGTON, Appellant.
No. 1 CA-CR 396.
Court of Appeals of Arizona, Division 1, Department B.
May 4, 1972.
*208 Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.
Ross P. Lee, Public Defender for Maricopa County by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.
HAIRE, Chief Judge, Division 1.
This is an appeal from a judgment entered upon a jury verdict finding defendant guilty of possession of heroin in violation of A.R.S. § 36-1002 (Supp. 1971-72) and from a sentence of not less than two nor more than three years. The relevant facts are as follows.
On July 16, 1970 three police officers, acting on a tip from an informant, approached the front of Top's Tavern on West Buckeye Road in Phoenix, Arizona. They had been informed that defendant "was standing in front of Top's Tavern dealing heroin out of his hand". The defendant was one of several people standing out in front of the tavern. As the three men approached from their car, four balloons were thrown to the ground containing heroin.
At trial the only real factual dispute had to do with who threw the balloons. This dispute first came to a head in a pretrial motion to suppress, where the defendant challenged the introduction of a "hype kit", i.e., a homemade apparatus used for the injection of narcotics, which was found on defendant's person pursuant to a search made by the officers in front of the tavern. A hearing was held outside the presence of the jury in which two of the officers testified they saw defendant throw the balloons to the ground as they approached. They also testified that defendant was then arrested and subsequently searched. At the close of the hearing the defendant's motion was denied.
Appellant's first contention is that it was error for the trial court to deny his motion to suppress in that the seizure of the hype kit was the result of an unreasonable search in violation of the Fourth and Fourteenth Amendments to the United States Constitution. The heart of appellant's claim is that the officers did not have in their possession at the time of the search facts of sufficient trustworthiness to validly arrest the defendant. Thus, they argue, this search does not fall under the protection of Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) which allows warrantless searches pursuant to a valid arrest.
In support of this position appellant attacks the trustworthiness of the information presented to the officers by the informant. Specifically he claims that the information received was not sufficiently definite, and that there was a lack of facts and circumstances from which the officers *209 could judge the reliability of the informant and the means by which he obtained his information.
Appellant's argument overlooks the fact that these officers observed highly suspicious activity in front of the tavern, and that their arrest and search of defendant flowed from these observations. A.R.S. § 13-1403, subsec. 4 (Supp. 1971-72) provides that an officer may arrest without a warrant:
"When he has probable cause to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it."
It is true, of course, that this court is bound to follow the United States Supreme Court in ascertaining the admissibility of evidence when a search and seizure claim is presented. State v. Graham, 97 Ariz. 408, 401 P.2d 141 (1965). And it is also true that the language of the above-quoted statute must be construed in conformity with Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) where the court held:
"The evidence at issue, in order to be admissible, must be the product of a search incident to a lawful arrest, since the officers had no search warrant. The lawfulness of the arrest without warrant, in turn, must be based upon probable cause, which exists `where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.'" 374 U.S. at 34-35, 83 S.Ct. at 1630, 10 L.Ed.2d at 739.
But the testimony of at least two of the officers in this case clearly revealed that they saw defendant throw away the balloons. This, coupled with the testimony that they were familiar with the practice of carrying narcotics in "balloons" provided sufficient facts and circumstances to warrant a man of reasonable caution to believe that an offense was being committed. In short, apart from the information given them by the informant, the officers had probable cause based upon their own observations to arrest defendant. Thus their search pursuant to that arrest was constitutionally valid.
Appellant's second question concerns the trial court's restriction on certain inquiries into the reliability of the informant. Specifically, during the hearing on the motion to suppress, the trial judge refused to allow an answer to the following question advanced by counsel for the defense to one of the arresting officers: "Has this particular informant been made an offer to work off a charge, so to speak?"
Appellant urges that the motive of an informant is vitally important in determining the trustworthiness of the facts which the informant gives to the police officer, and that the question posed bore heavily on whether this informant had any motive to give false information to the officer. In view of our finding that the officers had independent grounds for the arrest of defendant by virtue of their own observations, we think it unnecessary to consider this question.
Appellant's third contention centers on the admissibility of certain evidence presented at trial relating to the dosage of heroin seized. During direct examination, Edward Trujillo, the state's expert witness, discussed the amount of heroin present in the four balloons involved in this case. On cross-examination, he stated that the heroin weighed 1030 milligrams or 1/28th of an ounce. On redirect examination Trujillo was asked: "Could you tell us, sir, how much heroin would be used in the average dose, if you would?" The defendant objected to this question on the ground of relevance, but his objection was overruled. Trujillo then testified that the normal dose of heroin was approximately 100 milligrams and that therefore the four balloons contained approximately ten doses.
Appellant contends that this evidence was inadmissible for two separate *210 reasons. First, he argues this evidence was irrelevant and highly prejudicial, in that it raised the inference that defendant was possessing the heroin for sale  a crime he was not charged with. We disagree. This testimony was not only relevant; it was a necessary part of the state's case. Proof of possession of a usable amount of narcotics is required if a conviction is to be sustained under A.R.S. § 36-1002 (Supp. 1971-72). State v. Moreno, 92 Ariz. 116, 374 P.2d 872 (1962). See also State v. Ballesteros, 100 Ariz. 262, 413 P.2d 739 (1966); State v. Urias, 8 Ariz. App. 319, 446 P.2d 18 (1968). Where, as here, the amount of narcotics involved is so small as not to be commonly understood to be a usable amount, the rule of State v. Quinones, 105 Ariz. 380, 465 P.2d 360 (1970) comes into play:
"... where the amount of narcotics involved is so small as to not be within the realm of an uninformed layman's knowledge of usability, there must be evidence presented by the State as to its usability...." 105 Ariz. at 382, 465 P.2d at 362.
Furthermore, as indicated by the record, whatever prejudicial effect this testimony may have had on the jury was de minimus in light of the wealth of other incriminating evidence presented to it.
Appellant's second argument is that Trujillo was not qualified as an expert on the practices of narcotics users, and that no foundation was laid for his opinion that a normal dose of heroin consists of approximately 100 milligrams. This is incorrect. On direct examination Trujillo stated that on approximately 600 different occasions he had testified in regard to tests performed on narcotic substances and in regard to the known practices of narcotic users. Without objection, he also stated that he was familiar with these practices. In our view this was a sufficient foundation and a sufficient showing of expertise for Trujillo's testimony as to the number of milligrams contained in a normal dose of heroin.
Affirmed.
EUBANK and JACOBSON, JJ., concur.