565 P.2d 194

STATE of Arizona, Appellee,

v.

Dwain Leon MAGNESS, Appellant.

No. 1 CA–CR 1612.

Court of Appeals of Arizona,
Division 1,
Department A.

April 5, 1977.

Rehearing Denied May 13, 1977.

Review Denied June 7, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Lynn Hamilton, Asst. Atty. Gen., Phoenix, for appellee.

Martin, Feldhacker & Friedl by William H. Feldhacker, Phoenix, for appellant.

## OPINION

DONOFRIO, Judge.

This is an appeal by defendant/appellant Dwain Leon Magness from a judgment of conviction of the crime of possessing a narcotic drug, a felony. He claims that the trial court erred in not granting his motion to suppress evidence. Defendant waived his right to a jury trial and submitted his case to the trial court on the basis of the preliminary hearing transcript. The trial court found defendant guilty of the charge and placed him on probation for five years.

Briefly, the facts are as follows: On April 29, 1975, Narcotics Agents Rogers and Thrasher of the Department of Public Safety learned that a white Falcon containing three particular individuals would be making a trip from Nogales, Mexico to Phoenix after purchasing heroin at the border city. The officers acquired this information from two separate informants, each of whom did not know the other or have access to the other's information. The agents also learned that the appellant, and others, would be leaving the Phoenix, Arizona, area at approximately 2:00 o'clock p. m. that day to purchase the heroin in Mexico. They would be returning from Nogales sometime around midnight the same day.

The agents were advised that appellant would be accompanied to Nogales by Paul

Tansey and Thomas Malloy in a 1961 white Ford Falcon with Arizona license plate PEJ–076. This car was registered to Thomas Malloy. All of this information was received by approximately 1:30 o'clock p. m. on April 29, 1975.

Acting on this information the agents drove about 30 miles south of Phoenix and parked along Interstate 10 about 10:00 o'clock p. m. of that day. At approximately 11:14 o'clock p. m. the agents observed the described automobile returning to the Phoenix area. The automobile was kept under observation for 45 minutes and then stopped by an officer of the Department of Public Safety at approximately 12:03 o'clock a. m. on April 30, 1975 as it exited the freeway at Northern Avenue. All of the passengers in the car were arrested. The car was searched as well as the arrestees with negative results.

The appellant and others were then transported to the Department of Public Safety headquarters where they were strip-searched. At that time, a lubricant was observed in appellant's anal area. Thereupon the officers sought a search warrant, and at 4:00 a. m. a Maricopa County Superior Court Judge issued a body cavity search warrant.

Appellant was transported to Dr. Miller's office for the body cavity search. The doctor did not have the correct instruments to retrieve contraband located in an anal passage, so appellant and others were transported to Good Samaritan Hospital.

The view of defendant Magness's rectum was at first negative. However, at the hospital the equipment was somewhat better and a condom was observed in appellant's anal cavity. Dr. Miller utilized biopsy forceps with cups on their ends to reach up approximately eight inches into appellant's anus to retrieve a condom filled with heroin. Defendant Magness was charged with possession of heroin.

Appellant claims that the agents had approximately ten and one-half hours to obtain a search warrant before appellant's expected return from Nogales, and the failure to obtain one taints any search carried out when the appellant was stopped on returning to the Phoenix area.

## QUESTION PRESENTED FOR REVIEW

We are called upon to determine whether the trial court erred in failing to grant appellant's motion to suppress the evidence incident to the stop, the arrest and the search of appellant being a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

Appellant argues that the failure of the DPS agents to secure a warrant when an officer has time to obtain one, or when there are no exigent circumstances, is ground for exclusion of the evidence found. He bases this argument on the decisions in *State v. Miller*, 110 Ariz. 491, 520 P.2d 1115 (1974); *State v. Hutton*, 110 Ariz. 339, 519 P.2d 38 (1974); *State v. Madden*, 105 Ariz. 383, 465 P.2d 363 (1974); and *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

We distinguish this case from *Miller*, supra, in that in *Miller* an airplane traveler was detained for three hours at the Tucson air terminal without ever being arrested. Subsequently, the traveler's flight bag in a public locker was searched. Our Supreme Court in that case held that a warrantless search, not incidental to a lawful arrest, was illegal.

In *Hutton*, supra, a Phoenix, narcotics officer received information from an informant that a person had narcotics in his possession at that time. The next day the narcotics officer confronted this accused individual without intending to arrest him and searched his person. The Arizona Supreme Court held that under those circumstances the search was impermissible.

*Hutton*, however, may easily be distinguished factually from the case at bar. In *Hutton*, the informant stated that he only knew that the accused person was to be in possession of the narcotics at the time that he relayed the information to the police officer. The Supreme Court underscored the fact that during the intervening 24-

hour period, between the reception of the informant's tip and the subsequent search, it would be just as probable to suppose that the alleged possessor had disposed of the contraband as it would be to think that he still had the narcotics on his person. The opinion held that the officer, at the time of the search, never had sufficient probable cause to arrest.

■ In the instant case, the pair of reliable informants stated a length of time, up to and including the time of the midnight arrest, that the appellant would be in control of the heroin. Because of this fact and the other relevant facts hereinafter discussed, we believe the officers had probable cause to arrest appellant upon stopping the car in which the appellant was a passenger.

The first informant had made three controlled buys in two weeks for Officer Rogers, while the second informant had made one recent controlled narcotics buy for Officers Rogers and Thrasher. Each informant had supplied the officers with information concerning the appellant's actions of the day in question. The officers were informed that the appellant, with two other companions, would leave the Phoenix area at approximately 1:30 p. m., cross the border, make a narcotic purchase and return to Phoenix around midnight the same day. They were also informed as to the type of car and its license number. At approximately 10:30 p. m. the night in question the officers drove approximately 30 miles south of the town on Interstate 10 and waited to see if the automobile so described in the informant's tip would drive by. At approximately 11:15 p. m. such an automobile drove by. The informant's information was corroborated at that point in the following particulars: The automobile contained three occupants; it was of the year and make so described by the informants; the license plate was exactly correct; and the car was approaching from the south on Interstate 10 as the informants had told the officers it would.

The informants were correct about a high enough number of facts to indicate to a reasonable man that the informants might be correct about the most important fact, that the appellant was in possession of heroin.

The detail and circumstances here fall well into the holdings of *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and *Spinelli v. U. S.*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ The Fourth Amendment prohibition of unreasonable searches and seizures does not preclude a search conducted incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). In *Robinson* we find:

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that amendment." *United States v. Robinson*, 414 U.S. at 235, 94 S.Ct. at 477, 38 L.Ed.2d at 440.

Appellant has cited the case of *State v. Madden*, 105 Ariz. 383, 465 P.2d 363 (1970), for the proposition that wherever practical, a police officer must obtain a search warrant. The *Robinson* and *Gustafson* decisions discussed, supra, are not contra with the decision reached in *Madden*, but reach to a different area of law.

The Arizona appellate courts have not previously been called upon to evaluate the validity of a strip search as an incident to a lawful arrest in the light of the *Robinson* and *Gustafson*, supra, decisions. Prior to those two cases, Arizona has followed the rule adhered to by the dissent in *Robinson* and *Gustafson*. In other words, Arizona required that there be probable cause to arrest and that a contemporaneous search incident to such arrest be a search for

weapons or evidence related to the crime for which the person was arrested.

■ We believe the reasoning in *Robinson* and *Gustafson* (majority opinions) is sound and subject to application in Arizona. In other words, any search made upon the person of an arrestee shall be held reasonable and proper if such search follows the guidelines set forth under the *Gustafson* and *Robinson* decisions, and is not in violation of the Arizona Constitution, Art. II, § 8.

■ The Court will now examine the reasonableness and extent of the "strip" search in this case. The passengers in the car returning to Phoenix from Nogales were suspected of smuggling narcotics. It is a commonly acknowledged fact that narcotics dealers often carry the contraband, heroin, in balloons or similar containers. *State v. Washington*, 17 Ariz.App. 207, 496 P.2d 633 (1972). Often these balloons are concealed in various body cavities with lubricants as in: *United States v. Sosa*, 469 F.2d 271 (9th Cir. 1972), cert. den. 410 U.S. 945, 93 S.Ct. 1399, 35 L.Ed.2d 612; *United States v. Velasquez*, 469 F.2d 264 (9th Cir. 1972), cert. den. 410 U.S. 945, 93 S.Ct. 1399, 35 L.Ed.2d 612 and *United States v. Summerfield*, 421 F.2d 684 (9th Cir. 1970). Where a man under arrest is suspected of smuggling narcotics this Court is persuaded by the case of *People v. Woods*, 139 Cal.App.2d 515, 293 P.2d 901, cert. den. 352 U.S. 1006, 77 S.Ct. 566, 1 L.Ed.2d 550 (1956), that an examination of his rectum for telltale signs around the rectum that narcotics might be concealed therein is permissible in the strip search incident to a lawful arrest.

■ The Courts have upheld this personal search to be conducted at the station house for two primary reasons: It would violate all concepts of decency to conduct such an intimate search on a public street; and a thorough search is necessary because narcotics paraphernalia are so small they can be secreted in body cavities.

In the case of *United States v. Klein*, 522 F.2d 296 (1975), the appellant argued that a similar search conducted upon his person was shocking and too intrusive. The facts of that case show that after stripping Mr. Klein was requested, or ordered, to bend over and he was examined visually by Agent Doyle, including a visual examination of his rectum. The Court answered the contention by stating:

"A post arrest search of the person, plainly authorized by Edwards and DeLeo [2], may include requiring a suspect to remove his clothes and a visual inspection of his person. * * * That is all that happened here. If such procedures were not permissible it would often be difficult to conduct a thorough search for weapons and contraband. * * * There was no piercing or probing of Klein's skin, nor forced entry beyond the surface of his body. There was not even any touching of his body. Thus, his only claim is based upon the indignity of being forced to strip in front of the agents and to expose his private parts. But there is no evidence that the stripping was a pretext to humiliate or degrade him, * * * and the modesty of one lawfully arrested must give way to reasonable precautionary procedures designed to detect hidden evidence, drugs, or objects which might be used against others or cause self-inflicted harm." 522 F.2d at 300.

In the case of *People v. Woods*, supra, the arresting officer told the appellant he had reason to believe that the appellant might still have a narcotic secreted on his person and asked him to remove his trousers and bend over for an examination. The Court stated:

"We are in accord with the announced judgment of the trial judge that the actions of the officers were not so brutal and shocking that they offended the due process clause. Accordingly, there is fundamental difference between this case and the facts in the *Rochin* and *Martinez*

---

2. *United States v. DeLeo*, 422 F.2d 487 (1970), cert. den. 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 and *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

**322**

cases.[3] * * * In the instant case defendant was under arrest for being under the influence of a narcotic, a misdemeanor, violation of a county ordinance. The officer was justified in making the arrest of the defendant on that ground and placing him in jail pending the hearing on that charge. The officer, at that time, after the examination he made of the defendant, who was about to be imprisoned, was justified in believing the defendant was about to bring with him into jail narcotics concealed in or on his person, * * * a felony. [The officer] related to the defendant that 'he had reason to believe' he did have possession of narcotics and a physical examination revealed sufficient circumstances to indicate that such narcotics were concealed in the place they were found. Under such circumstances a reasonable search of the defendant was authorized. It must be recognized that persons about to enter jails or penal institutions may be examined by the custodian of such institutions for the purpose of preventing the bringing in of weapons and contraband. When this examination is reasonable and not conducted in a brutal or shocking manner, there is no constitutional inhibition. The right of peace officers to search persons lawfully arrested and to seize things connected with the crime is well established. *Harris v. U. S.*, 331 U.S. 145, 151, 67 S.Ct. 1098, 91 L.Ed. 1399; *U. S. v. Rabinowitz*, 339 U.S. 56, 61, 70 S.Ct. 430, 94 L.Ed. 653." 293 P.2d at 905, 907, 908.

This Court holds that the strip search of the appellant was not only reasonable but was proper under the circumstances herein set forth. The appellant has not contested in any manner any further search nor the removal of the object under the search warrant obtained by the officers.

The judgment and sentence of the trial court is hereby affirmed.

NELSON, P. J., and OGG, J., concur.

---

**3.** *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *People v. Martinez*, 130 Cal.App.2d 54, 278 P.2d 26 (1954).