**UNITED STATES**

v.

**Sergeant Michael PECHEFSKY, FR 142–46–5346, United States Air Force.**

**ACM 23387.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 27 Oct. 1981.

Decided 25 June 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter and Major Michael J. Hoover.

Before MILES, KASTL and RAICHLE, Appellate Military Judges.

DECISION

KASTL, Judge:

Three issues require our consideration: (1) Did the accused's false making of the signature of his commander to a credit rec-

ommendation constitute service-discrediting conduct under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (UCMJ)? (2) Was there a valid apprehension of the accused, based on probable cause? and (3) Was the strip-search of the accused, conducted two hours after the initial pat-down search, valid as incident to apprehension? Finding no error, we affirm.[1]

## I

### Forged Credit Recommendation

The accused, stationed in England, was charged with falsely making his commander's signature to a letter urging favorable consideration of a loan.[2] After signing an application to buy furniture from an English merchant, the accused was informed that a letter from his commander would be needed indicating the accused's departure date from England. The accused then falsely signed his commander's signature to a letter stating that the accused would not rotate until 21 November 1982 (the correct date of expected departure). The letter also asserts that the accused "is a very responsible and mature individual;" and that the commander "would appreciate immensely any action you could take which would speed-up Sgt Pechefsky obtaining some furniture."

▉ A court-martial properly can determine that submitting a forged recommendation for favorable credit with intent to deceive is service-discrediting. *United States v. Winton*, 15 U.S.C.M.A. 222, 35 C.M.R. 194, 197 (1965); *see also, United States v. Rusterholz*, 39 C.M.R. 903, 905 (A.F.B.R.1968).

1. Upon mixed pleas, the accused was convicted by general court-martial of falsely making the signature of another with intent to deceive and possession of methadone, both in violation of Article 134, Uniform Code of Military Justice; and ten offenses of making and uttering worthless checks, in violation of Article 123a, UCMJ, 10 U.S.C. § 923a, *supra*. He was sentenced to a bad conduct discharge, confinement at hard labor for 18 months, and reduction to airman basic.

2. The specification reads as follows:
Specification 1: In that SERGEANT MICHAEL PECHEFSKY, United States Air Force, 6988th Electronic Security Squadron, did, at Royal Air

The accused seeks to distinguish *Winton*, however, on the theory that: (a) the crime requires both a false signing *and a false content*; and (b) the one material fact significant to the furniture store—the accused's date of rotation—was accurately related. This argument fails, in our judgment.

▉ Credit statements such as this one are accepted at face value in the community, premised on the integrity of the commander and the Air Force. This integrity is severely undercut when the forged recommendation of a commander is circulated. Here, the accused intended that the entire document persuade the English merchant to furnish him credit. More specifically, the document was intended to deceive the recipient by falsely representing that the commander vouched for the accused as a good credit risk; such statement was supposedly backed by the full dignity and prestige of the commander's office. Under the circumstances, we have no doubt that the accused's activity was palpably service-discrediting.

## II

### The Accused's Apprehension

At trial, the accused moved under Mil.R. Evid. 311(c) to suppress two vials of methadone which formed the basis for a conviction of drug possession, in violation of Article 134, UCMJ. He now argues that the military judge erred in denying the defense

Force Mildenhall, Suffolk, England, on or about 16 February 1981, without authority, wrongfully and with intent to deceive, and for the purpose of purchasing furniture on credit, falsely make the signature of Robert P. Walsh, Lieutenant Colonel, United States Air Force, Commander, 6988th Electronic Security Squadron, to a letter dated 16 February 1981, addressed to Wallace Kings, Thetford, Norfolk, England, attesting to the good character of the said Sergeant Michael Pechefsky, and urging that the said Sergeant Michael Pechefsky be allowed to speedily obtain furniture, and did communicate said letter to the said Wallace Kings.

motion. Resolution of this matter requires us to consider two closely-related issues: First, was there a valid apprehension based on probable cause?; and second, was the resulting search some one and one-half to two hours later, which revealed the vials of methadone, incident to the earlier apprehension?

The following facts give rise to these issues: Senior Airman C, a security policeman, observed the accused at the base bowling alley. Airman C described the accused as sluggish and nodding off quickly, with "pin-pointy," constricted eyes. Airman C had encountered drug users often in high school and believed the accused to be under the influence of drugs, not merely tired. He called the law enforcement desk. Technical Sergeant L responded and made the following observations:

—the accused nodded off while reading a letter and again while eating a sandwich;

—the accused's pupils were constricted, he was having difficulty standing, and he "was pressed hard to get his words out;"

—the accused did not seem to be in full control of himself or to understand everything being said to him.

Since the accused appeared not to understand, TSgt L repeated several times to the accused that he was suspected of being under the influence of drugs.

TSgt L placed the accused under his "military control" and patted him down. The accused was taken to his duty section, to the law enforcement desk, to a doctor, and then back to the law enforcement desk. While Sergeant L testified that he felt he had sufficient facts at the bowling alley to apprehend the accused, the first use of the word "apprehension" occurred at the doctor's office, approximately one hour after TSgt L's initial contact. The accused was not strip-searched until some one and one-half to two hours after that initial contact. The methadone was then found in the accused's right sock.

■ The judge found that probable cause existed to apprehend the accused, based in particular upon his languorous movements, constricted pupils, difficulty in speaking, falling asleep, and lack of alcohol on his breath. Believing that these matters provided ample cause to justify apprehension of the accused, we concur. *United States v. Thomas*, 10 M.J. 687, 690 (A.C.M.R.1981). *See also, United States v. Kinane*, 1 M.J. 309, 314 (C.M.A.1976); *United States v. Salatino*, 22 U.S.C.M.A. 530, 48 C.M.R. 15, 17 (1973); and *United States v. Wheeler*, 21 U.S.C.M.A. 468, 45 C.M.R. 242, 247 (1972).

■ We also agree with the military judge that apprehension occurred at the bowling alley. The UCMJ does not delineate the precise method by which an apprehension may be accomplished, but simply provides that apprehension is the taking of a person into custody. Article 7(a), UCMJ, 10 U.S.C. § 807(a), *supra*. The determination of whether an apprehension has been effected involves examining the substance of the act, not its form. *United States v. King*, 42 C.M.R. 1004, 1006 (A.F.C.M.R. 1970); *United States v. Hance*, 10 M.J. 622, 624 (A.C.M.R.1980).

■ Although Sgt L never used the word "apprehension" at the bowling alley, we believe he made it clear to the accused that he was under military control at that point and not free to go. Consequently, upon our reading of the record, we are satisfied that the accused was properly apprehended at the bowling alley.

### III

#### The Resulting Search

■ The defense further asserts that the search here, some 90 to 120 minutes after the apprehension, was not incident to that apprehension. We disagree.

In *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), a unanimous Supreme Court stated that "[o]nce an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." *Id.* at 367, 84 S.Ct. 883.

Later cases, however, have altered this position.[3] In *United States v. Edwards*, 415 U.S. 800, 39 L.Ed.2d 771, 94 S.Ct. 1234 (1974), the Court held, by a 5–4 majority, that searches of an arrestee's person and articles associated with his person which could have been conducted at the time of apprehension might legally be performed later at the place of detention. *Id.* 415 U.S. at 805, 94 S.Ct. at 1238. The search of the arrestee's clothing occurred some 10 hours after his arrest. The Court explained that:

> This was no more than taking from respondent the effects in his immediate possession that constituted evidence of crime. This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that [accused] was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention.

*United States v. Edwards, supra*, at 805, 94 S.Ct. at 1238. This is the position taken consistently by the courts in recent, post-*Edwards* cases. *See United States v. Monclavo-Cruz*, 662 F.2d 1285, 1289–1290 (9th Cir. 1981); *United States v. Ziller*, 623 F.2d 562 (9th Cir. 1980) (person and clothing of the arrestee); *People v. Harfmann*, Colo. App., 633 P.2d 500, 501 (1981) (accused searched 30 minutes later at Justice Center); *People v. Lafayette*, 99 Ill.App.3d 830, 55 Ill.Dec. 210, 425 N.E.2d 1383, 1385 (1981);

*State v. Magness*, 115 Ariz. 317, 565 P.2d 194 (Ariz.App.1977) (strip search at police station); *State v. Castagna*, 170 Conn. 80, 364 A.2d 200, 204 (1976) (seizure six hours after custody because accused taken to hospital for treatment). *See also, State v. Adams*, 80 N.M. 426, 457 P.2d 223 (1969) (seizure at hospital while accused being treated; and at jail during booking procedure).

The facts in the instant case bring it well within the ambit of *Edwards*. We find the search proper.[4] *United States v. Young*, 44 C.M.R. 670 (A.F.C.M.R.1971), *pet. denied* 44 C.M.R. 940 (1972); *United States v. Gladdis*, 11 M.J. 845, 849 (A.C.M.R.1981); *United States v. Davis*, 43 C.M.R. 516, 520 (A.C.M.R.1970). *See generally*, 2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment 303–306, 311–313 (1978).

The findings of guilty and the sentence are

AFFIRMED.

RAICHLE, Judge, concurs.

MILES, Senior Judge, not participating.

---

3. For the view that *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) has been effectively overruled, see the dissenting opinion of four justices in *Cooper v. California*, 386 U.S. 58, 65, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). *See generally*, 2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment, 303–304 (1978).

4. We perceive no purposeful delay by the Government here. The record indicates that the period of time between the apprehension and the search was occupied by the accused seeing a doctor and by the Security Police awaiting results of a request to the installation commander for a warrant. Before us, as at trial, the Government relies entirely upon search incident to apprehension to justify the resultant search.