ESPINOSA, Judge,
dissenting.
¶ 16 Because the officers reasonably suspected Barnes was concealing contraband; conducted a lawful strip search incident to her arrest, see United States v. Brack, 188 F.3d 748, 758-59 (7th Cir.1999), State v. Magness, 115 Ariz. 317, 321, 565 P.2d 194, 198 (App.1977); and, without any inspection or intrusion into a body cavity,[8] seized evi- *284 denee in plain view that they were lawfully situated to observe, see Minnesota v. Dickerson, 508 U.S. 366, 374-75, 113 S.Ct. 2130, 2136-37, 124 L.Ed.2d 334 (1993), I would find no constitutional violation occurred and that the trial court erred in suppressing the resulting evidence.
¶ 17 The Fourth Amendment does not prohibit all searches and seizures, only those that are unreasonable. U.S. Const, amend. IV. “The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.” Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). Without question, a search that intrudes beyond the body’s surface goes to the heart of “the human dignity and privacy which the Fourth Amendment protects” and, generally, cannot be performed without a warrant. See Schmerber, 384 U.S. at 770, 86 S.Ct. at 1835. A law enforcement officer clearly intrudes beyond the body’s surface by piercing the skin in order to draw a blood sample, see id,., or inserting digits or instruments into a body cavity in an attempt to search for or secure evidence. See, e.g., United States v. Nelson, 36 F.3d 758, 761 (8th Cir.1994) (endoscopic examination violated Fourth Amendment where not authorized by search warrant); United States v. Cameron, 538 F.2d 254, 258 (9th Cir.1976) (Fourth Amendment violated where defendant subjected to digital rectal probes and enemas and forced to drink laxative); see also Conwell v. State, 714 N.E.2d 764, 767-68 (Ind.Ct.App.1999) (defendant’s constitutional rights violated when placed in chokehold and forced to spit out contraband). The strip search in this case did not somehow become transformed into such a situation.
¶ 18 Armstrong, during a lawful inspection of Barnes’s body, saw a plastic bag extending from her rectal area. She testified that she “touch[ed] the item,” and it immediately “fell out.” There “ ‘was no piercing or probing of [Barnes’s] skin, nor forced entry beyond the surface of h[er] body.’ ” Magness, 115 Ariz. at 321, 565 P.2d at 198, quoting United States v. Klein, 522 F.2d 296, 300 (1st Cir. 1975). The search in this case raises different, and I believe less grave, considerations for a person’s privacy, dignity, and health than when the state causes something to intrude, i.e., to either forcefully enter or visually peer into a person’s body. Only that situation was addressed by the court in Schmerber. 384 U.S. at 767, 86 S.Ct. at 1834 (“[W]e are dealing with intrusions into the human body____”). Thus, Schmerber helps guide but does not control our decision here.
¶ 19 This search was reasonable and within the bounds of the Fourth Amendment. The reasonableness of a search can be determined from the scope of the intrusion, the place where the search was conducted, the manner in which it was conducted, and the justification for initiating it. See Wolfish, 441 U.S. at 559, 99 S.Ct. at 1884. Here, the officers had ample reason to suspect Barnes was concealing contraband, and they were permitted to conduct a strip search and to examine the area around her rectum. See Magness, 115 Ariz. at 321, 565 P.2d at 198; see also Swain v. Spinney, 117 F.3d 1, 7 (1st Cir.1997) (“[T]he reasonable suspicion standard governs strip and visual body cavity searches in the arrestee context----”); Fuller v. M.G. Jewelry, 950 F.2d 1437, 1446 (9th Cir.1991) (strip search and visual body cavity inspection of arrestee justified by reasonable suspicion); Klein, 522 F.2d at 300 (upholding strip search and visual inspection of rectal area after arrest for drug possession). The search was performed by a female officer in a secluded and unoccupied cell. See Justice v. City of Peachtree City, 961 F.2d 188, 193 (11th Cir.1992) (strip search performed in least offensive manner where officers were same sex as arrestee and only participants during search). The record suggests the search was brief and not conducted in an offensive manner, no physical force beyond touching the item was required to dislodge it, and there was little or no threat to Barnes’s health and safety. See Winston v. Lee, 470 *285 U.S. 753, 761, 105 S.Ct. 1611, 1617, 84 L.Ed.2d 662 (1985) (threat to health and safety of individual a factor in determining intrusiveness of search).
¶20 Generally, law enforcement officers need not obtain a warrant to seize evidence that is in plain view and that they are lawfully situated to observe. See Dickerson, 508 U.S. at 374-75, 113 S.Ct. at 2136-37. Thus, a warrant is not required to seize contraband that is found between the cheeks of the buttocks during a lawful strip search incident to an arrest. See People v. Walker, 27 A.D.3d 899, 810 N.Y.S.2d 592, 595 (N.Y.App.Div.2006); People v. Wade, 208 Cal.App.3d 304, 256 Cal.Rptr. 189, 191 (1989); Commonwealth v. Thomas, 429 Mass. 403, 708 N.E.2d 669, 671 (1999); McGee v. State, 105 S.W.3d 609, 613 (Tex.Crim.App.2003). It makes little sense, therefore, to require officers to obtain a warrant in cases such as this, where contraband is visible between the cheeks of the buttocks and may be retrieved easily, without harm to the individual, but may be partially secreted in the rectum. See New York v. Belton, 453 U.S. 454, 458, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768 (1981) (Fourth Amendment doctrine should be expressed in readily applicable terms, not by set of rules with subtle nuances and hairline distinctions); see also United States v. Ross, 456 U.S. 798, 821, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982) (“When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions ... must give way to the interest in the prompt and efficient completion of the task at hand.”).
¶ 21 In a case with facts similar to those before us, the Ninth Circuit Court of Appeals found that officers conducting a lawful strip search properly seized suspected contraband extending from a suspect’s vaginal area because it was not a body cavity search. United States v. Holtz, 479 F.2d 89 (9th Cir.1973). There, the defendant, while crossing the international border, was suspected of concealing contraband and was strip searched.[9] Id. at 90-91. As part of the search, Holtz was asked “to bend over and spread her buttocks,” and the United States Customs in-spectress “saw part of a rubber prophylactic hanging down from Holtz’s vaginal area.” Id. at 90. The “prophylactic was readily viewable and [she] finished removing it from Holtz’s vagina.” Id. In denying Holtz’s constitutional challenge and upholding the trial court’s decision to admit the resulting drug evidence, the court found the officers had reasonably suspected Holtz was concealing contraband and had performed a lawful strip search, “not a body cavity search.” Id. at 92. The court found there had been no “invasion and intrusion [as] regulated by ... Schmer-ber.” 479 F.2d at 94. It distinguished Schmerber and its progeny from the officer’s search of Holtz, stating “each of those cases involved an intrusion into the body,” and by implication, found no such intrusion had occurred during the search at issue. 479 F.2d at 92. The subsequent Ninth Circuit decision in Fuller, contrary to the majority’s characterization, is entirely consistent with this conclusion and does not reject it in any way, holding only that when a body cavity is actually searched, unlike here, either exigent circumstances or probable cause is required. 950 F.2d at 1449-50.
¶ 22 Similarly, in State v. Jones, 76 Wash. App. 592, 887 P.2d 461 (1995), the Washington State Court of Appeals found that officers conducting a lawful strip search incident to an arrest were not required to obtain a search warrant to seize suspected contraband extending from a suspect’s rectum. Jones had been arrested for an offense involving possession of cocaine, and he was subsequently strip searched. Id. at 465. During the search, “a small portion of [a] tube protruded from his anus, and Officer Connor retrieved it by touching that extended portion. Detective Connor did not touch Jones.” Id. at 464. On appeal, Jones argued the tube should have been suppressed at trial because *286 the officers had searched a body cavity and, therefore, should have obtained a warrant. Id. In upholding the trial court’s decision to admit the evidence, the appellate court stated: “The fact that [the officer] touched an object embedded inside the body cavity does not constitute touching the body cavity itself.” Id. A warrant had not been required for the search because there was “no evidence that either detective touched or probed Jones’ rectum in any way.”[10] Id.
¶23 In sum, neither a search of nor an intrusion into a body cavity occurred here and I would follow the sensible path of Holtz and other courts that distinguish between an officer’s merely touching an item that is in plain view and only partially secreted into a body cavity as opposed to causing an intrusion into the body cavity itself. The reasonableness standard of the Fourth Amendment is satisfied when an officer conducting a lawful strip search incident to an arrest observes likely contraband protruding from a body cavity, and retrieves it without discontinuing the search to obtain a warrant if the officer is able to do so easily, without any probing, touching, or entering into the suspect’s body, as was the case here.[11]

. The majority subtly but significantly mischarac-terizes my position when it expresses disagreement with “the dissent’s threshold premise that the officer’s act of manipulating an item extending into the defendant’s rectum, however gentle, *284 was necessarily less intrusive than the procedure in Schmerber — a blood draw.” I neither say nor suggest anything of the kind. The record establishes that no intrusion, gentle or otherwise, occurred, notwithstanding the majority’s novel the-oiy that removal of the plastic baggie "had the effect” of exerting some type of "force” within the body. Schmerber, however, does not rely on such delicate quantum mechanics, nor should the reasonableness of an otherwise lawful search.

. Although the court analyzed the strip search in light of the lowered expectation of privacy at the border, see United States v. Montoya de Hernandez, 473 U.S. 531, 539, 105 S.Ct. 3304, 3309, 87 L.Ed.2d 381 (1985), it also expressly, rather than inferentially as stated by the majority, addressed the separate issue, which we are faced with in this case: whether removing suspected contraband in plain view but partly secreted in a body cavity constitutes an unconstitutional intrusion into the body under Schmerber.

. As the majority points out, the Washington appellate court based its decision on its interpretation of statutes governing the scope of searches rather than an interpretation of the Fourth Amendment. But the court implicitly found the search constitutional because it drew added support for its decision from United States v. Holtz, 479 F.2d 89 (9th Cir.1973), a case decided on constitutional grounds. More importantly, any search authorized by a state’s statutes must also comply with the Fourth Amendment, Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961) (Fourth Amendment enforceable against the states); State v. Audley, 77 Wash.App. 897, 894 P.2d 1359, 1365 (1995) (Washington statutes regulating searches of persons comply with Fourth Amendment).

. At what point such a situation might require a search warrant could, under some conceivable scenarios, become more difficult to determine, but a feminine tampon is clearly distinguishable from the protruding baggie here because anything resembling a tampon would ordinarily fail the threshold test of likely contraband in plain view. In any event, such a case is not before us.