UNITED STATES, Appellee,

v.

Staff Sergeant David M. WHALEN, SSN
288–54–0405, United States
Army, Appellant.

CM 441706.

U. S. Army Court of Military Review.

18 March 1983.

Colonel William G. Eckhardt, JAGC, Major Lawrence F. Klar, JAGC, and Captain

Edmund S. Bloom, Jr., JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Captain Thomas E. Booth, JAGC, and Captain Leonard L. Lucey, JAGC, were on the pleadings for appellee.

Before O'DONNELL, FOREMAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Judge:

Contrary to his pleas, the appellant was convicted of possession of marihuana with intent to sell it, sale of marihuana, and possession of methaqualone, in violation of Articles 134 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 892 (1976). His approved sentence provides for a dishonorable discharge, confinement at hard labor for four years, total forfeitures and reduction to the lowest enlisted grade.

The appellant contends that the military judge erred by refusing to suppress evidence which was illegally seized, by unfairly restricting the defense cross-examination of a government witness, and by incorrectly admitting a hearsay statement under the provisions of Mil.R.Evid. 803(24). Lastly, the appellant asserts that the evidence is insufficient to establish his guilt beyond a reasonable doubt.

### I. *Facts of the Case*

On 5 April 1981, around noontime, Major George B. Josephson visited elements of the 67th Signal Battalion at their field location at Fort Gordon, Georgia. At the time, Major Josephson was both the operations officer and the executive officer of the battalion. Major Josephson attempted to enter a communications van, designated Headquarters 26, but found the door locked from the inside. He knocked on the door twice to no avail. After he knocked a third time and identified himself, someone unlocked the door and he stepped into the doorway. The appellant, a Specialist Rodriguez, a Specialist Vega, and a Private First Class Tallman were in the van. Major Josephson immedi-

ately smelled the odor of burning marihuana. He also noticed that the main fluorescent lighting system was turned off, although the van was dimly lit by small incandescent lights. Major Josephson testified that he thought the van's ventilating blowers were turned off, but several other occupants of the van testified that the blowers were on. Major Josephson testified that the appellant was seated at a desk at the end of the van opposite the entrance. However, another witness, Private First Class Tallman, testified that the appellant was standing near the entrance when Major Josephson entered the van and that the appellant sat at the desk only after Major Josephson ordered him to sit down. When the occupants of the van were searched, the appellant had a twenty-dollar bill loose in his pocket, separate from his other money which was in his wallet, and a plastic bag containing dust-like marihuana particles. On the desk where the appellant had been seated was a folded newspaper. A pile of loose marihuana, a plastic bag of marihuana and a scale were concealed inside the newspaper. Near the desk was an ashtray which contained the remains of several marihuana cigarettes. Also near the desk was a Tupperware container which contained more marihuana, marihuana seeds, thirty-seven plastic bags and several methaqualone pills. None of the other occupants of the van had marihuana on their person, but Specialist Rodriguez had a "roach clip" in his pocket. The Tupperware container and the newspaper were dusted for fingerprints, but no latent prints were found on the Tupperware container. One latent print was found on the newspaper, but it did not match the prints of any of the occupants of the van.

At about 1630 hours on the same day, Rodriguez was interviewed by Special Agent R.B. Rogers. Rodriguez voluntarily executed a written statement under oath in which he stated that he purchased a bag of marihuana from the appellant for twenty dollars just a few minutes before Major Josephson discovered them in the van. Rodriguez said that he paid the appellant with a twenty-dollar bill, the appellant handed Specialist Vega the bag of marihuana, and

Vega checked the marihuana and then handed the bag to Rodriguez. Rodriguez said that he, Vega and the appellant smoked marihuana about five minutes before Major Josephson's arrival. Lastly, Rodriguez stated that when Major Josephson entered the van he concealed his bag of marihuana. He also stated that Private First Class Tallman entered the van about two minutes before Major Josephson, but she had nothing to do with the marihuana.

At the trial, Tallman testified that she was responsible for the van as a team chief. She stated that she was accustomed to locking the van door as a matter of habit because she usually worked in a van containing sensitive classified equipment. Consequently, she locked the van door as she entered without thinking about it.

Rodriguez was called as a government witness, although the trial counsel disclosed beforehand that he expected Rodriguez to repudiate his sworn pretrial statement of 5 April. The trial counsel also announced that he intended to impeach Rodriguez with his statement of 5 April and offer the statement as substantive evidence of the marihuana sale. The government relied on Mil. R.Evid. 803(24), the residual hearsay exception, as authority for the admissibility of the statement. On 6 May 1981, Rodriguez had executed a second sworn statement at the Article 32 investigation, repudiating his earlier statement of 5 April. At the trial, Rodriguez testified that, to his knowledge, there was no marihuana in the van when Major Josephson entered. On cross-examination Rodriguez testified that his statement of 5 April was untrue and that he made it because he was ill at the time of the interview, he was pressured by Special Agent Rogers to give evidence against the appellant, and he finally gave Rogers the answers he wanted in order to terminate the interview. Over defense objection, Rodriguez' statement of 5 April 1981 was received in evidence as substantive evidence of the appellant's possession and sale of marihuana.

The appellant testified on his own behalf and denied possessing or selling any mari-

huana or knowing about any marihuana in the van. He testified that the occupants in the van smoked cigarettes but no marihuana. He testified that he had the plastic bag in his pocket because he picked it up from the ground earlier in the day and had not had an opportunity to dispose of it. He believed that Major Josephson's accusations against him were in retribution for complaints which the appellant had filed against the unit for racial and sexual discrimination.

## II. *Seizure of the Plastic Bag*

The appellant contends that when Major Josephson smelled what he thought was marihuana his only justified action was "a survey of the area to ensure no further activation of marihuana." The appellant argues that since Major Josephson saw no marihuana in plain view he had no authority to apprehend and search the occupants of the van.

█ At the outset, we hold that the van was not a place protected by the fourth amendment. It was military equipment, not designed or intended to be a place free from governmental intrusion. Therefore, Major Josephson was entitled to enter the van without probable cause or a search authorization. *See United States v. Simmons,* 22 U.S.C.M.A. 288, 46 C.M.R. 288 (1973); *United States v. Weshenfelder,* 20 U.S.C. M.A. 416, 43 C.M.R. 256 (1971); *United States v. Taylor,* 5 M.J. 669 (A.C.M.R.1978), *aff'd,* 8 M.J. 98 (CMA 1979) (summary disposition); *United States v. McClelland,* 49 C.M.R. 557 (A.C.M.R.1974).

Secondly, we hold that Major Josephson lawfully apprehended the appellant, the plastic bag and a twenty-dollar bill were discovered during a search incident to such apprehension, and the fruits of the search were admissible.

█ Major Josephson had probable cause to apprehend the appellant. The Court of Military Appeals has recognized that "there is widespread familiarity with the odor of marihuana in those parts of the military community where apparently it is used widely—albeit illegally." *United States v.*

*Cunningham,* 11 M.J. 242, 247 n. 5 (C.M.A. 1981) (citation omitted). Both this Court and the Court of Military Appeals have held that the opinion of an experienced noncommissioned officer regarding the presence of an odor of burning marihuana may be sufficient to establish probable cause. *United States v. Cunningham, supra; see United States v. Cooper,* 14 M.J. 758, 761 (A.C.M.R. 1982). Obviously the same rule would apply to an experienced commissioned officer. In this case Major Josephson testified that he was able to recognize marihuana by its odor and appearance. He testified that he had attended several training sessions sponsored by drug enforcement agents of the U.S. Army Criminal Investigation Command and had accurately detected and seized marihuana on several occasions. We are satisfied that Major Josephson had probable cause to apprehend the occupants of the van based on his detection of a strong odor of burning marihuana, which was reinforced by the surrounding suspicious circumstances: the van door locked from the inside and the darkened interior of the van.

■ We find that the appellant was apprehended by Major Josephson, even though Major Josephson did not specifically tell the appellant that he was being apprehended. As a commissioned officer, Major Josephson had the general authority to apprehend. Article 7(b), Uniform Code of Military Justice, 10 U.S.C. § 807(b) (1976); Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 19*a.* Major Josephson ordered all occupants of the van to put their hands in their pockets, stop talking and stay in place. All of the occupants clearly understood that they were not free to leave. Major Josephson's actions and orders constituted an apprehension. *United States v. Pechefsky,* 13 M.J. 814, 816 (A.F.C.M.R.1982); *United States v. Hance,* 10 M.J. 622, 624 (A.C.M.R.1980). Since the evidence was seized in a properly conducted search incident to a lawful apprehension, the assigned error is without merit.

### III. *Restrictions on Defense Cross-Examination*

■ The appellant contends that the military judge improperly restricted the defense's cross-examination of Major Josephson. Major Josephson had testified that he had queried a Specialist King and a Private First Class Youngblood prior to approaching the van where the appellant was apprehended. When the defense asked Major Josephson what King was wearing and what she was using to clean out her van, the military judge sustained the trial counsel's objection on the ground that such evidence was irrelevant. Similarly, when the defense cross-examined Major Josephson about his ability to ascertain Youngblood's identity and his recollection of what Youngblood was doing when Major Josephson approached him, the military judge sustained a government objection. The defense contends that such cross-examination was necessary to test Major Josephson's recall of the details of the incident.

The assignment of error is without merit. The military judge permitted extensive cross-examination of Major Josephson regarding his observations and actions in and around the van occupied by the appellant. The military judge's limitation of cross-examination regarding Major Josephson's preliminary actions prior to his encounter with the appellant was of marginal significance. The military judge's ruling falls well within the limits of his discretion. Mil.R.Evid. 403.

### IV. *Pretrial Statement of Specialist Rodriguez*

■ At the trial Rodriguez disclaimed any knowledge of the appellant's possession or sale of marihuana. The government's purpose in calling him as a witness was to impeach him with his prior inconsistent statement and to offer his prior statement as substantive evidence of the appellant's possession and sale of marihuana. The military judge admitted Rodriguez' pretrial statement as substantive evidence under the "residual hearsay exception" in Mil.R. Evid. 803(24). The appellant now contends that the military judge erred in admitting Rodriguez' statement as substantive evi-

dence. We hold that the military judge ruled correctly.

The military rule is identical with Federal Rule of Evidence 803(24). The drafters of the Military Rules of Evidence intended to adopt Fed.R.Evid. 803(24) without change. Manual for Courts-Martial, United States, 1969 (Revised edition), Analysis of the Military Rules of Evidence at A18–107.

■■■ This case does not involve an issue of confrontation, because the declarant testified at the trial. While the confrontation clause of the United States Constitution and the hearsay rule "stem from the same roots," they are not congruent. *United States v. Carlson*, 547 F.2d 1346, 1356 (8th Cir.1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977), *quoting Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). The right of confrontation means that an accused is entitled to confront a witness at the trial, but not necessarily at the time the witness produced evidence against the accused. *California v. Green*, 399 U.S. 149, 153–64, 90 S.Ct. 1930, 1932–38, 26 L.Ed.2d 489 (1970). *See United States v. Carlson*, 547 F.2d at 1355. The primary issue in this case is one of trustworthiness of the pretrial statement, not confrontation of the declarant by the accused.

■ The decision whether to admit evidence under the exception set out in Rule 803(24) rests within the discretion of the judge. *United States v. Friedman*, 593 F.2d 109 (9th Cir.1979); *United States v. Bailey*, 581 F.2d 341 (3d Cir.1978).

■ The federal rules advisory committee intended that the rule "provide for treating new and presently unanticipated situations which demonstrate a trustworthiness within the spirit of the specifically stated exceptions." Saltzburg and Redden, *Federal Rules of Evidence Manual* 557 (2d ed. 1977). Their intent in drafting the residual hearsay rule was to leave room for growth and development in the law, but not to permit "an unfettered exercise of judicial discretion . . . ." *Id.* This interest was recognized by the Court of Appeals for the

Second Circuit in *United States v. Medico*, 557 F.2d 309, 315 (2d Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977), when the court commented that the purpose of the residual hearsay rule was to "permit the courts to deal with new and presently unanticipated situations which demonstrate a trustworthiness within the spirit of the specifically stated exceptions." Similarly, the Third Circuit has commented that the residual hearsay provisions were added to avoid torturing other rules to allow reliable evidence to be introduced when "certain exceptional guarantees of trustworthiness exist and high degrees of probativeness and necessity are present." *United States v. Bailey*, 581 F.2d at 347 (footnote omitted). The residual hearsay exception was not intended to create a new class of exceptions, but recognizes that cases may arise in which hearsay which does not fit into one of the enumerated exceptions may be more probative than that provided for in the enumerated exceptions. *See* 4 Weinstein and Burger, *Weinstein's Evidence* 803–286 and 803–296 (1981).

■■■ The requirements for "exceptional guarantees of trustworthiness" and "high degrees of probativeness and necessity" are not intended to negate the intent expressed in Fed.R.Evid. 102 and Mil.R. Evid. 102 to promote "growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." *See United States v. American Cyanamid Company*, 427 F.Supp. 859, 866 (S.D.N.Y.1977). A case need only be "exceptional" in the sense that it was not anticipated by the drafters and that it meets the same guarantees of trustworthiness established by the Federal Rules of Evidence and the Military Rules of Evidence for other types of hearsay evidence. *See Zenith Radio Corporation v. Matsushita Electric Industrial Company, Limited*, 505 F.Supp. 1125, 1262–63 (E.D.Pa.1980); *United States v. Bailey, supra; United States v. American Cyanamid Company, supra.* Evidence which is not covered by other exceptions, but which meets the same "exceptional guarantees of trustworthiness" falls

"within the spirit of the specifically stated exceptions," and may be received in evidence. *United States v. Medico,* 557 F.2d at 315.

It is clear from the history of the Federal Rules of Evidence and the Military Rules of Evidence that the fundamental philosophy behind the hearsay rule remains unchanged under the new rules. Traditionally, hearsay evidence has been regarded as incompetent, or at least objectionable, because it lacks trustworthiness. *See* 2 C. Torcia, *Wharton's Criminal Evidence* § 265 (13 ed. 1972). The exceptions to the hearsay rule traditionally have rested on the premise that some evidence, although hearsay, is reliable because of the circumstances surrounding the hearsay declaration. *See United States v. Ferguson,* 15 M.J. 12, 24 (C.M.A.1983) (Everett, C.J., concurring in the result). The exceptions to the hearsay rule, including the residual hearsay exception, do not depart from the fundamental requirement for trustworthiness.

The record in this case amply supports the military judge's determination that Rodriguez' prior statement was sufficiently trustworthy to permit its admission. The declarant, as well as the CID agent to whom the declaration was made, were subjected to extensive cross-examination by the appellant's counsel. Where the declarant is subjected to a cross-examination regarding the prior hearsay declaration, the opportunity for confrontation in cross-examination may provide the requisite guarantees of trustworthiness. *See United States v. Leslie,* 542 F.2d 285 (5th Cir.1976).

Secondly, the statement has many of the same guarantees of trustworthiness found in other exceptions. Rodriguez' statement is similar to a statement against penal interest, which may be admitted under Rule 804(b)(3), but that rule is applicable only when the declarant is unavailable. *See generally United States v. Alvarez,* 584 F.2d 694, 699 (5th Cir.1978). The statement is similar to the "prior testimony" which may be admitted under Rule 801(d)(1)(A),

except for the fact that it was not made at a "trial, hearing or similar proceeding." *United States v. Luke,* 13 M.J. 958 (A.F.C. M.R.1982); *United States v. Livingston,* 661 F.2d 239 (D.C.Cir.1981); *United States v. Ragghianti,* 560 F.2d 1376 (9th Cir.1977); *Martin v. United States,* 528 F.2d 1157 (4th Cir.1975); *United States v. Tavares,* 512 F.2d 872 (9th Cir.1975); *but see United States v. Castro-Ayon,* 537 F.2d 1055 (9th Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976).

Thirdly, the circumstances under which the statement was made establish its trustworthiness. The statement was made shortly after the incident, and was reduced to writing and sworn. Rodriguez was advised of his rights, voluntarily waived them and then gave information which subjected him to prosecution.

We find that Rodriguez' statement has "circumstantial guarantees of trustworthiness" which are at least equivalent to the other exceptions to the hearsay rule. The record establishes that the evidence was exceptionally trustworthy, material, very necessary and much more probative than any other reasonably available evidence, and that the purposes of the rules of evidence and the interests of justice would best be served by admitting the evidence. Accordingly, we hold that the military judge did not abuse his discretion by admitting Rodriguez' prior statement as substantive evidence of the appellant's possession and sale of marihuana. Therefore, we find the assigned error without merit.

## V. Sufficiency of the Evidence

### A. Sale of Marihuana (Specification 2 of the Charge).

The only direct evidence of a sale of marihuana was Rodriguez' pretrial sworn statement, which he repudiated at the Article 32 investigation and again at the trial. However, some of the details of Rodriguez' pretrial statement were corroborated by physical evidence. Rodriguez stated that he paid for the marihuana with a twenty-dollar bill; a loose twenty-dollar bill was found in the appellant's pocket, separate from his other money, which was in his

wallet. Rodriguez stated that he, Vega and the appellant smoked marihuana in the van; the remains of several marihuana cigarettes were found in an ashtray near the desk where the appellant had been seated. Furthermore, the military judge was able to observe the demeanor of both Rodriguez and Special Agent Rogers, who interrogated Rodriguez, as well as the demeanor of the appellant, who testified in his own defense. The military judge was convinced beyond a reasonable doubt that the facts recited in Rodriguez pretrial statement should be believed. His determination should not be disregarded lightly. *United States v. Frierson,* 20 U.S.C.M.A. 452, 43 C.M.R. 292 (1971); *United States v. Albright,* 9 U.S.C.M.A. 628, 26 C.M.R. 408 (1958). We have independently evaluated the evidence in this case and are satisfied beyond a reasonable doubt of the appellant's guilt.

B. *Possession of Marihuana With Intent to Sell (Additional Charge 2 and its Specification).*

The appellant was apprehended with a plastic bag containing marihuana particles in his pocket. It may be reasonably inferred that the pile of marihuana on the desk at which the appellant was seated came from the bag in his pocket. Also on the desk was a bag of marihuana and a scale. This evidence, coupled with the evidence that a sale actually occurred, is sufficient to convince us beyond a reasonable doubt of the appellant's guilt.

C. *Possession of Methaqualone (Additional Charge I and its Specification).*

The methaqualone pills were in the Tupperware container along with a quantity of marihuana and a number of empty plastic bags. The container could have belonged to any of the occupants of the van, as well as any other persons who were not present when Major Josephson entered the van. We are not satisfied that the appellant owned or possessed the Tupperware container or even was aware of its contents. Accordingly, we will set aside the findings

of guilty of Additional Charge I and its specification.

VI. *Errors Asserted by Appellant Pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982).*

We have considered the assignments of error brought to our attention pursuant to *United States v. Grostefon, supra.* To the extent they have not been incorporated in the other assignments of error discussed above, we find them without merit.

The findings of guilty of Additional Charge I and its specification are set aside. Additional Charge I and its specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms only so much of the sentence as provides for a dishonorable discharge, confinement at hard labor for three years, total forfeitures and reduction to the lowest enlisted grade.

Senior Judge O'DONNELL and Judge WERNER concur.