# UNITED STATES

v.

Sergeant Susanna M. HOMAN, FR 491–74–5937, United States Air Force.

ACM 25352.

U.S. Air Force Court of Military Review.

Sentence Adjudged 17 April 1986.

Decided 28 Oct. 1986.

Appellate Counsel for the appellant: Colonel Leo L. Sergi, Major William H. Lamb and Major Francis T. Lacey, USAFR.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major David F. Barton.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION

STEWART, Judge:

Pursuant to her pleas the appellant was convicted of using methamphetamine on divers occasions (Charge I and its Specification). She pleaded not guilty to, but was convicted of, conspiring to make a false sworn statement (Charge II and its Specification) and making a false sworn statement that one Staff Sergeant (SSGT) S. had used methamphetamine on one occasion (Charge III and its Specification). The general court-martial with members sentenced her to be discharged from the service with a bad conduct discharge, to be confined for four months, to forfeit $300.00 per month for three months and to be reduced to the grade of E–1. The convening authority approved the sentence.

The appellant assigned two errors. First, she urges that the trial judge erred to her substantial prejudice by admitting, under Military Rule of Evidence (Mil.R. Evid.) 803(24), an out of court statement made by a Technical Sergeant (TSGT) Nickerson. Secondly, she avers that the evidence is insufficient to sustain the findings of guilty of the two offenses to which she pleaded not guilty. We find against the appellant on the first assigned error, but partially agree as to the second.

Sometime during the day of 3 March 1986 the accused and TSGT Nickerson learned the Air Force Office of Special Investigations (AFOSI) wanted to talk to them. On 4 March 1986 the appellant and TSGT Nickerson went as requested, to the (AFOSI) office at Beale Air Force Base (AFB), California, for interrogation. The two had been together for a few days in several locales in the Beale AFB vicinity prior to that date. TSGT Nickerson was the first to be questioned, and he executed a signed sworn statement to the effect that he had used methamphetamine with the appellant and SSGT S. Later that day the appellant was interviewed by Special Agent (SA) Scroggins. She admitted using methamphetamine on several occasions and related SSGT S's involvement. Apparently because of the press of other commitments, SA Scroggins turned her over to TSGT Archer, who took a written sworn statement from her.

Approximately a week later, on 10 March, the appellant told her squadron commander that she had given a false statement to the AFOSI about an individual. The commander did not question her, but referred her to the AFOSI. Subsequently that day she saw SA Scroggins at the AFOSI office and essentially retracted her 4 March statements concerning SSGT S. The following day, 11 March, she returned to the AFOSI office and provided a written sworn statement. In her 11 March written sworn statement she averred, *inter alia:*

> I came to the AFOSI Office ... freely to retract information I provided on 4 March 86. In that statement I stated I had used Crank (methamphetamine) with [SSGT S.] at his on-base quarters at BAFB. I wish now to state that this is a lie. The statement was false and I knew it was false when I made it. I have never used methamphetamine or any other drugs with SSGT [S].

Furthermore, she also recounted that she and TSGT Nickerson "figured" that SSgt S had turned them in. It was TSGT Nickerson's idea to implicate SSGT S because he felt, "that since he was going down he was going to take people with him." Consequently, she and TSGT Nickerson, "decided to implicate SSGT [S] in drug abuse ..."

TSGT Nickerson also, at his own initiative, visited the AFOSI office in 11 March, and he also talked with SA Scroggins. This time he said that he wished to change his statement regarding SSGT S and that

he had discussed the matter with the appellant. According to TSGT Nickerson, he and the appellant had thought that SSGT S was responsible for turning them in to the AFOSI, and they had collectively decided to falsely implicate SSGT S. However, TSGT Nickerson declined to make a written sworn statement.

TSGT Nickerson was granted testimonial immunity for the appellant's trial. Just the day before trial, 14 April 1986, he told trial counsel that his 11 March oral statement was false and that his 4 March sworn statement implicating SSGT S was true after all. TSGT Nickerson was called by the defense as a witness and did testify on the merits, admitting he made the 11 March statement, but claiming it was false.

## I

In a motion *in limine* the defense sought to preclude the admission of TSGT Nickerson's 11 March oral statement. Also included in the motion were two oral statements made to the AFOSI by SSGT S denying use of methamphetamine with the appellant and TSGT Nickerson. However, SSGT S had refused to testify at the appellant's trial, on the advice of counsel. The importance of these statements to the prosecution was highlighted by trial counsel's concession that if none of them were admitted into evidence there would probably be insufficient evidence to corroborate the appellant's confession, her 11 March statement.

After the motion was thoroughly litigated, the trial judge ruled that SSGT S's statements were inadmissible, but that TSGT Nickerson's 11 March statement would be admitted in accordance with Mil. R.Evid. 803(24). Accordingly, SA Scroggins was later permitted to testify as to TSGT Nickerson's 11 March oral statement to him.

In ruling that TSGT Nickerson's 11 March statement was admissible, the trial judge made the following findings:

> ... Specifically, in the exercise of my judicial discretion, I find the following factors to justify admission of Tech Sergeant Nickerson's statement: First it does constitute evidence of material facts that he and the accused entered a conspiracy to falsely implicate [SSGT S] in drug abuse; that he and the accused made false statements to accomplish that purpose; and their reasons and motivations for doing so. Second, it is more probative that—more probative that other reasonably available evidence. Arguably, those 11 March oral statements by Tech Sergeant Nickerson would be more probative than the live, in-court, testimony of Tech Sergeant Nickerson, since his credibility may be attacked by the other inconsistent statements he has made. Third, the interests of justice are served by the admission of that statement since it gives evidence of a conspiracy to give false testimony to Air Force law enforcement investigators by two Air Force noncommissioned officers who have been bestowed with a higher degree of respect and trust because of their positions, and their apparent effort to falsify information concerning drug abuse by a third NCO had serious implications for morale and discipline within the Beale Air Force Base community.

> Additionally, I find that there are substantial indicia of trustworthiness in the circumstances surrounding Tech Sergeant Nickerson's 11 March oral statements. First, he volunteered the information, as did the accused, in the 11 March statement, and was not pressured or even requested to do so by the OSI agents. Second, his statement is consistent with, factually similar to, and goes into substantial detail like the voluntary sworn confession of the accused rendered on the same date. Third, although unsworn and oral, Tech Sergeant Nickerson's statements were after Article 31 rights advisement concerning the meaning and—concerning the use which could be made of such statements, and his statement is self-incriminatory of the offenses of conspiracy and false swearing; a fact which was pointed out by the OSI agent who heard him revoke his 4 March

statement, and yet Tech Sergeant Nickerson did not ... retract the 11 March statement until over one month later. Fourth, the timing and apparent reasons for the 11 March statements, which occurred one week after his original sworn statement implicating [SSGT S], is more consistent with truthfulness than is the 14 April '86 retraction of the 11 March statement; that is, the second retraction was made under a grant of immunity, a day before the accused's trial, which raises an inference of Tech Sergeant Nickerson's unwillingness to testify against the accused, possibly out of friendship or fear of retaliation. Fifth, a reasonable person in Tech Sergeant Nickerson's situation would not have walked in to the OSI agent—OSI agent's office and volunteered information implicating himself in two further crimes, to the best of his knowledge then unknown to the OSI, unless he believed that statement to be true; that is, I find no apparent motive, from the circumstances presented thus far, for Tech Sergeant Nickerson and the accused to falsify their 11 March statements, no perceivable benefit could accrue to the accused or Tech Sergeant Nickerson other than possibly easing their consciences over having falsely accused an innocent person.

■ These findings were supported by the evidence and as far as they represent findings of fact, we find the trial judge acted well within his discretion. There remains, however, the question of whether these facts, and possibly others, justify admission of TSGT Nickerson's 11 March statement under Mil.R.Evid. 803(24).

That residual hearsay exception requires a four prong test. We find the three criteria listed in Mil.R.Evid. 803(24)(A) through (C) were met. It is the requirement that the statement not specifically covered by the other exceptions in Mil.R.Evid. 803 have "equivalent circumstantial guarantees of trustworthiness" which requires discussion.

The leading military case on Mil.R.Evid. 803(24) trustworthiness is *United States v.* *Powell,* 22 M.J. 141 (C.M.A.1986). As to determining trustworthiness the trial judge has considerable discretion. *United States v. Powell, supra,* 145. Thus, we do not consider the trustworthiness issue here *de novo,* but approach it with the philosophy that we will not disturb the trial judge's determination unless he abused his discretion. *United States v. Friedman,* 593 F.2d 109, (9th Cir.1979).

Before *Powell* the Courts of Military Review developed two apparently conflicting lines of authority as to what factors qualify as "equivalent circumstantial guarantees of trustworthiness." The Air Force view was enunciated in *United States v. Harris,* 18 M.J. 809 (A.F.C.M.R.1984). There we said that the language of Mil.R.Evid. 803(24) limits the circumstantial guarantees of trustworthiness to guarantees similar to those found in the other exceptions of Mil. R.Evid. 803. Thus, in applying Mil.R.Evid. 803(24) we declined to find a purported accomplice's statement against penal interest trustworthy on the basis that it would have been so recognized under Mil.R.Evid. 804(b)(3). That latter rule permits admission of statements against penal interest where the declarant is unavailable to testify. *But see United States v. Ruffin* 12 M.J. 952 (A.F.C.M.R.1982), *United States v. Hines* 18 M.J. 729 (A.F.C.M.R.1984), and *United States v. Barror,* 20 M.J. 501 (A.F. C.M.R.1985), where we did not employ such a restrictive rule in considering factors demonstrating trustworthiness in applying Mil.R.Evid. 804(b)(5), the twin residual hearsay rule.

The other view is represented in *United States v. Whalen,* 15 M.J. 872 (A.C.M.R. 1983), which we expressly declined to follow in *Harris.* The Army Court of Military Review in *Whalen* found three primary types of circumstances which could guarantee trustworthiness. In holding that a declarant's pretrial statement against penal interest was admissible under Mil.R.Evid. 803(24), that Court reasoned: first, the declarant was subjected to cross examination at trial, citing *United States v. Leslie,* 542 F.2d 285 (5th Cir.

1976); secondly, the declarant's statement was similar to a statement against penal interest, which, if the declarant is unavailable to testify, is admissible under Mil.R. Evid. 804(b)(3), and, since it was a signed sworn statement, it was similar to "prior testimony" admissible under Mil.R.Evid. 801(d)(1)(A); and thirdly, there were other circumstances of trustworthiness including the facts the statement was reduced to writing and sworn, it was made shortly after the incident, and the declarant provided the information after being advised of his rights and waiving them. It is clear the Army Court of Military Review believed factors bearing on trustworthiness could be drawn from a broad range of considerations and not just limited to similarities to other exceptions in M.R.E. 803. In a recent case factually similar to the one before us involving a declarant's oral unsworn statement against penal interest, the Navy-Marine Corps Court of Military Review followed *Whalen* in holding an out of court statement was admissible under Mil. R.Evid. 803(24). *United States v. Yeauger*, 20 M.J. 797 (N.M.C.M.R.1985), *pet. granted*, 22 M.J. 199 (1986).

With this background on record, the Court of Military Appeals decided *United States v. Powell, supra*. This was a case considered by the Army Court of Military Review at 17 M.J. 975 (A.C.M.R.1984). There the declarant, Private Hernandez, had provided the Army Criminal Investigative Division (CID) a written sworn statement that she had purchased heroin on credit from Powell. At Powell's trial Private Hernandez testified her prior statement was false, and she had made it to get the CID off her back. The trial judge admitted her prior statement as substantive evidence under Mil.R.Evid. 803(24). In upholding the military judge's ruling, the Army Court of Military Review employed a broad ranging analysis in considering trustworthiness, specifically citing *United States v. Whalen, supra,* as a similar case.

Only two judges participated in the Court of Military Appeals decision. Judge Cox authored the Opinion of the Court. In holding that Private Hernandez's state-

ment was admissible under Mil.R.Evid. 803(24), he implicitly applied the broader rule utilized in *United States v. Whalen, supra, United States v. Yeauger, supra,* and in our decisions of *United States v. Ruffin, supra, United States v. Hines, supra,* and *United States v. Barror, supra.* Among the factors Judge Cox cited as establishing the trustworthiness of Private Hernandez's out of court statement were:

> Hernandez admitted making the pretrial statement; ... she was available for cross-examination regarding it; ... the substance of her pretrial statement was independently corroborated by another prosecution witness ...; ... her trial testimony was internally inconsistent; ... the reasons she gave for changing her story were improbable; and ... she mislead trial counsel as to the nature of her testimony up to the moment of trial.

*United States v. Powell, supra,* 145.

Chief Judge Everett concurred in a separate opinion. He opined that since the declarant had testified and was available for cross-examination, he was willing to uphold the exercise of the military judge's discretion. However, he cautioned that had not the declarant testified, the rationale for admissibility was weaker. He reserved his judgement as to that situation.

It is evident that neither Court of Military Appeals judge participating in the *Powell* decision adopted the restrictive rule we espoused in *United States v. Harris, supra.*

Considering the *Powell* case, the trial judge's findings, and the entire record, we find that the military judge did not abuse his discretion in admitting TSGT Nickerson's 11 March statement under Mil.R. Evid. 803(24). Accordingly, we resolve the first assigned error against the appellant.

## II

We turn now to the sufficiency of the evidence and conclude that while the evidence was sufficient to support the conspiracy, it was not sufficient to support the conviction of false swearing.

■ The false swearing specification alleged that the accused swore that, "STAFF SERGEANT [S] wrongfully used methamphetamine on one occasion during January 1986, ..." As the only evidence the appellant made this statement under oath, the prosecution introduced her sworn statement to the AFOSI dated 4 March. The only references to SSGT S in that statement are as follows:

> ... I had used it [methamphetamine or crank] in SSGT [S's] on base quarters on Tyburn Drive ... The only others present when I used crank was Nick and [SSGT S]. [SSGT S] was only present once, that's when I used it at his house sometime in January....

It is clear that the appellant did not aver in her sworn statement that SSGT S had used methamphetamine; she merely stated that she had used it once at his house and in his presence. The government's theory of prosecution was that she personally made the false sworn statement, not that she was an aider and abettor of another. Accordingly, the trial judge did not instruct on an aider and abettor theory. Thus, there is a failure of proof and the findings of guilty of that offense must be set aside.

■ On the other hand, there is ample evidence upon which the court could find her guilty of the conspiracy. The specification of that offense reads, in pertinent part, that the appellant conspired with TSGT Nickerson to commit false swearing, "and in order to effect the object of the conspiracy," the accused, "provided on 4 March 1986, false information concerning STAFF SERGEANT [S] to agents of the Office of Special Investigations."

This specification does not allege as the overt act that the appellant made a false *sworn* statement; to the contrary, it only alleges that she gave false information to the OSI. We will not detail the evidence that the appellant and TSGT Nickerson conspired to make false sworn statements concerning SSGT S's purported use of methamphetamine, for it is clearly sufficient. However, we will note the key evidence upon which the court could deter-mine her guilty of this offense, as distinguished from the false swearing offense.

Trial counsel, on direct examination, asked SA Scroggins, "... did the accused, at any time during the course of your interview [on 4 March 1986], discuss drug involvement with Staff Sergeant [S]?" SA Scroggins answered, "Yes sir. And as I stated, she basically restated the same information Sergeant Nickerson had previously given us ..." Among the information TSGT Nickerson had given the OSI was a signed sworn statement, averring, *inter alia*, that, "I used crank one time with SGT SUE HOMAN and SSGT [S] the last week of Feb 86. We used the crank at [SSGT S's] house on BAFB." The appellant's sworn statement of 11 March 1986 ties this all together by saying, in pertinent part; "I came to the OSI office at Beale AFB, CA, freely to retract information I provided on 4 Mar 86. In that statement I stated I had used crank (methamphetamine) with [SSGT S] ..." This evidence was sufficient, when considered in the context of all the other evidence, for the court to conclude beyond a reasonable doubt that the appellant committed the overt act as alleged.

■ We have reviewed the record and find no error, other than noted, which prejudiced the substantial rights of the accused. The findings of guilty of Charge III and its Specification are set aside, and that Charge and Specification are dismissed. In view of this dismissal, we reassess the sentence. Having reassessed the sentence, we are convinced the sentence is appropriate in relation to the affirmed findings of guilty and is no greater than that which would have been imposed if the court had found the appellant not guilty of false swearing. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). The findings of guilty, as modified, and the sentence are

AFFIRMED.

Senior Judge SESSOMS and Judge LEWIS concur.